UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61577-CIV-DIMITROULEAS

DIGITAL AGE MARKETING GROUP, IMC.

    Plaintiff,

vs.

SENTINEL INSURANCE COMPANY LIMITED,
d/b/a THE HARTFORD,

    Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant Sentinel Insurance Company Limited d/b/a The Hartford ("Sentinel")'s August 11, 2020 Motion to Dismiss [DE-5] ("Motion"). The Court has considered the Motion, Plaintiff's September 24, 2020 Response [DE-26], Defendant's October 1, 2020 Reply [DE-32] and Notices of Supplemental Authority [DE-35, 38] and is otherwise fully advised in the premises.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

This is an action regarding insurance coverage for business income loss arising from local and state stay-at-home and shelter-in-place orders intended to stop or slow the spread of the novel coronavirus that causes the disease COVID-19. Compl. [DE-1-2, pp. 37-46] ¶¶ 11–16. On May 15, 2020, Plaintiff brought this action against Sentinel in the Seventeenth Judicial Circuit, in and for Broward County, Florida arising out of the policy of insurance ("Policy") between Sentinel and Plaintiff. Compl. ¶ 3. Plaintiff is seeking a declaratory judgment, damages for breach of contract, interest, costs and attorney's fees pursuant to Fla. Stat. § 627.428. Compl. ¶¶ 31, 33, 35, 46. Plaintiff's complaint seeks coverage under the policy for "property damage, suspension of business operations, sustained losses of business income, extended loss of business

income, business income dependent properties, and incurred extra expenses." Compl. ¶ 31. Plaintiff also invoked the Business Income, Extra Expense, Extended Business Income, and Civil Authority provisions of the Policy in its Complaint. Compl. ¶¶ 4–8.

On August 4, 2020, Sentinel removed this case from the Circuit Court of the Seventeenth Judicial Circuit, Broward County. [DE-1]. On December 1, 2020, this Court denied Plaintiff's Amended Motion to Remand. [DE-36].

The Complaint alleges several types of coverage provided by the Policy for loss of business income (often called business interruption insurance), for which an additional premium was charged. This coverage is specifically provided for in a section of the Spectrum Business Owner's Policy titled "5. Additional coverages… o. Business Income Coverage". Pursuant to this coverage, Defendants promised to pay for "Loss of Business Income" caused by a covered cause of loss. The particular covered loss in play is "direct physical loss or physical damage to" the Plaintiff's property.

The Complaint also alleges that there are additional coverages for other damages that may be in play for this loss including "Extra Expense" and "Extended Business Interruption". The Complaint also alleges that there was a whole different type of coverage titled "5. Additional coverages… q. Civil Authority" coverage that has been triggered by the various actions of the State of Florida and Broward County due to the effect of the pandemic, which resulted in the closure and limitation or reduction of the Plaintiff's business. Civil Authority coverage also provides payment for the various elements of damages including but not limited to Loss of Business Income, and Extra Expense. In addition to all these coverages, the Complaint alleges the policy provides a special endorsement which provides coverage, including but not limited to

Business Interruption Coverage, Extended Business Interruption and Extra Expense Coverage, for loss or damage caused by "fungi", wet rot, dry rot, bacteria or virus.

The Complaint alleges that the Defendant has denied coverage under the policy in its entirety on the various purported grounds set forth in its denial letter. [DE-1-2, pp. 246-251].

## II. STANDARD OF LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; *see also Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).

Additionally, although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id*.; *see also Iqbal*, 556 U.S. at 681

(stating conclusory allegations are "not entitled to be assumed true"). *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III.    DISCUSSION

The Defendant has moved to dismiss Plaintiff's State Court Complaint [DE-1-2, pp. 37-46] with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Defendant claims that Plaintiff's claims fail for a number of reasons and that the virus exclusion in the Policy bars any recovery. Defendant contends that the plain terms of the policy exclude from coverage losses caused directly or indirectly by a virus. Plaintiff's claims, as characterized by Defendant, are both premised on the policy providing coverage for its alleged virus-related business losses; as such, Defendant argues that Plaintiff cannot state a claim for relief.

When interpreting insurances contracts, under Florida law, the contract is construed according to its "plain meaning." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1304 (11th Cir. 2008). The insurance contract is ambiguous if its language lends itself to more than one interpretation. *Id.* "Ambiguous policy provisions ... should be construed liberally in favor of coverage of the insured and strictly against the insurer." *Dickson v. Econ. Premier Assur. Co.*, 36

So. 3d 789, 790 (Fla. 5th DCA 2010). Ambiguous "exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). However, "strict construction does not mean…that clear words may be tortured into uncertainty so that new meanings can be added. *State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc.,* 678 So. 2d 397, 401 (Fla. 4th DCA 1996), *on reh'g* (Aug. 20, 1996), *approved*, 711 So. 2d 1135 (Fla. 1998). "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979).

### A. Virus Endorsement and Virus Exclusion Policy Provisions

Defendant's primary argument is that the virus exclusion provision in the Policy bars all recovery in the present case. Defendant argues that there is no coverage under the Policy for Plaintiff's losses, despite the existence of a specific virus endorsement, due to the virus exclusion provision.  In response, Plaintiff contends that the very existence of a virus endorsement with a virus exclusion would appear to create ambiguity in the Policy on its face, especially in reference to this fairly unusual endorsement which would also appear to contain an exception to the exclusion. Plaintiff says there is a clear ambiguity, at the very least, in regards to what losses are covered when you compare the Policy's virus exclusion with its virus endorsement, listed under "Additional Coverage."

The endorsement regarding Limited Fungi, Bacteria, or Virus Coverage, which amends the Policy adds an exclusion and a limited coverage regarding fungi, bacteria, and viruses. The endorsement includes the following provisions regarding coverage of damages directly or indirectly cause by viruses:

> A. Fungi, Bacteria or Virus Exclusions
>
> \*\*\*
> 1. …
> 2. The following exclusion is added to Paragraph **B.1.** Exclusions of the Standard Property Coverage Form and the Special Property Coverage Form; Paragraph **F.**, Additional Exclusions of Computers and Media, form SS 04 41, and to form SS 04 45, Personal Property of Others:
>
>> i. "Fungi", Wet Rot, Dry Rot, Bacteria And Virus
>> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>>> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.
>>> (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a *"specified cause of loss"* to Covered Property, we will pay for the loss or damage caused by that *"specified cause of loss"*.
>>
>> *This exclusion does not apply:*
>>> (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; *or*
>>> (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by *a cause of loss other than fire or lightning.*
>
> [DE 1-2] at 191 (emphasis added).

The endorsement also adds an Additional Coverage provision to paragraph A.4 of the Standard Property Coverage Form entitled "Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria, and Virus. This provision reads as follows:

> B. The following Additional Coverage is added to Paragraph A.4 of the Standard Property Coverage Form…
>
> 1. Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus
>> a. The coverage described in 1.b. below only applies when the "fungi", wet or dry rot, bacteria, or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

> > (1) A 'specified cause of loss" other than fire or lightning:
> > (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applied to the affected premises.
>
> [DE 1-2] at 192.

Elsewhere in the Policy definitions are provided for terms used throughout the Policy. There "specified cause of loss" is defined as:

> Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, sleet; water damage
> [DE 1-2] at 101.

The unambiguous, reasonable reading of these provisions taken together is that the policy does not cover direct or indirect damage caused by a virus unless the virus is the result of fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, sleet; or water damage. Here, Plaintiff's claims for relief seek coverage caused directly or indirectly by a virus which the complaint does not allege was the result of a cause that would bring Plaintiff's claims within the coverage provided by the Policy. The Policy is not ambiguous merely because coverage and exclusions related to virus coverage are contained within an endorsement, nor because the endorsement contains provisions outlining both limited coverage and exclusions from coverage. As indicated above, the Court finds no ambiguity in the policy.

Additionally, Plaintiff argues that it is premature at the motion to dismiss stage for this Court to determine whether Plaintiff's claim comes under either the virus endorsement or the virus exclusion. Once again, Plaintiff concludes that these are fact determinations, and that Plaintiff is not required to set out all possible facts relating to its loss to survive a motion to dismiss. However, Plaintiff must allege facts sufficient to raise a plausible claim for relief.

Plaintiff fails to allege facts in its Amended Complaint that would the Court to draw a plausible inference that the Plaintiff's damages are covered by a reasonable reading of the Policy; as such, both Plaintiff's claims for breach of contract and a declaratory judgment fail to state a claim upon which relief may be granted.

While the Court need not address the Parties remaining arguments as the Court agrees with Defendant that the "'Fungi', Wet Rot, Dry Rot, Bacteria And Virus" Exclusion bars coverage of Plaintiff's claims as presently pled, as the Court is providing Plaintiff with leave to amend, the Court will briefly address the Parties remaining arguments.

### B. Lack of Coverage Due to Physical Loss or Damage

Defendant also argues that there is no coverage in this matter under the Policies various provisions, because the COVID-19 virus did not cause "direct physical loss or physical damage to" the Plaintiff's property. Plaintiff here cannot demonstrate direct physical loss or damage to property. Mere "economic losses – not anything tangible, actual, or physical" do not suffice to demonstrate direct physical loss under Florida law. *See Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) (report and recommendation to dismiss COVID-19 business interruption claims).

Plaintiff contends that this is not a legal issue, it is a factual one, which may even be subject to expert testimony. Plaintiff supports their position by stating that the Emergency Order of the Civil Authority of Broward County, in fact, specifically asserts that "the virus is physically causing property damage due to its proclivity to attach to the surfaces for prolonged periods of time", as well as a threat to health, as grounds for mandating nonessential businesses to close,

and strongly urging persons to stay at home. As such, plaintiff contends that this fact issue cannot be used as the basis of a Motion to Dismiss.

The Court disagrees. Although Judge Williams has yet to rule on Judge Torres' Report and Recommendation, the Court also finds Judge Torres' well-reasoned order persuasive. *South Florida ENT Associates v. Hartford,* No. 20-23677-CIV, 2020 WL 6864560 (S.D. Fla. Nov. 13, 2020). Judge Torres noted that "courts in our district have found – both before and in response to the COVID 19-pandemic – that '[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'' *S. Fla. Ent Assocs., Inc. v. Hartford Fire Ins. Co.*, No. 20-23677-CIV, 2020 WL 6864560, at *6 (S.D. Fla. Nov. 13, 2020) (quoting *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Aug. 4, 2010)), *aff'd*, 823 Fed. Appx.868 (11th Cir. 2020)). After extensive analysis of state and federal court cases, Judge Torres concluded that a direct physical loss required some actual loss, or diminution of value. *Id.* at *12. Plaintiff has failed to allege facts which would permit the Court to draw a plausible inference that the virus caused direst physical loss to Plaintiff's property under the terms of the Policy.

### C. Potential Coverage Under the Civil Authority Provision

Defendant asserts that the Civil Authority provision in the Policy is not itself a "Covered Cause of Loss" and, therefore, cannot trigger coverage under the Policy. Plaintiff contends that the Civil Authority provision extends business income coverage when a loss of business income is caused by the actions of a civil authority.

The Civil Authority Provision, listed under a subsection outlining "Additional Coverages" states:

> 5. Additional Coverages
> \*\*\*
>    q. Civil Authority
>    (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".
>    (2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:
>       a) When access is permitted to your "scheduled premises"; or
>       b) 30 consecutive days after the order of the civil authority.

[DE-1-2] at 87.

The Civil Authority provision, however, clearly states that coverage is extended when access to the relevant premises is "prohibited" by order of a civil authority "as the direct result of a Covered Cause of Loss to the property". Plaintiff has not sufficiently alleged that a Covered Cause of Loss to property under the Policy, not excluded by the "'Fungi', Wet Rot, Dry Rot, Bacteria And Virus" Exclusion, directly precipitated the orders of a civil authority upon with Plaintiff claims coverage under the Policy was triggered.

Plaintiff relies on a Western District of Missouri decision in *Studio 417 Inc v. Cincinnati Ins. Co.,* 2020 WL 4692385 (W.D. MO. 2020)*,* that rejected arguments similar to those asserted by the Defendant in the present case with regard to an insurance policy provision related to civil authority coverage. The Court is not persuaded by the Plaintiff's arguments. First, this Court must analyze the contract under Florida law and the precedent of the Eleventh Circuit. Second, Plaintiff's arguments still fail to address how its allegations state a claim for coverage under the terms of its policy, in particular the "'Fungi', Wet Rot, Dry Rot, Bacteria And Virus" Exclusion.

      This Court agrees with Defendant that the Civil Authority coverage provision provides no relief here.

### IV.   CONCLUSION

      Based on the foregoing, it is **ORDERED and ADJUDGED** that Defendant's Motion to Dismiss [DE-5] is **GRANTED**. Although it may be futile the Court will grant Plaintiff leave to file an amended complaint to be filed on or before January 22, 2021.

      DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 8th day of January, 2021.

*[signature]*

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of Record